UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ENDOTACH LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) No. 1:12-cv-01630-LJM-DKL |
| COOK MEDICAL INCORPORATED, | ) ) |
| Defendant. | ) |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Endotach LLC filed its Complaint in the Northern District of Florida on June 21, 2012. Dkt. No. 1. Upon Defendant Cook Medical Incorporated's ("Cook's") motion, the case was transferred here on November 8, 2012. Dkt. Nos. 1, 50 & 51. On June 28, 2013, Cook moved to dismiss this case for lack of subject matter jurisdiction arguing that Endotach does not have standing to bring suit. Dkt. No. 124. For the reasons stated herein, the Court **GRANTS** Cook's Motion to Dismiss; however, the dismissal is without prejudice.

### I. BACKGROUND

Dr. Valentine J. Rhodes ("Dr. Rhodes") is the inventor of the patents at issue in this law suit, U.S. Patent No. 5,122,154 (the "'154 patent") and U.S. Patent No. 5,593,417 (the "'417 patent") (collectively, the "Rhodes patents"). Dkt. No. 1, Compl. ¶¶ 6-11 & Exs. A & B thereto.

On July 29, 1999, Dr. Rhodes executed in Florida a Last Will and Testament (the "Will"). Dkt. No. 132-5. Although the Will bequeaths all "tangible personal property" to his wife, Brenda Rhodes ("Mrs. Rhodes"), there is no specific bequest of the Rhodes

patents or mention of any intangible property.[1]  *Id.*  The Will names Mrs. Rhodes as Dr. Rhodes' Personal Representative.  *Id.*  The Will's residuary clause bequeths "all the residue of [Dr. Rhodes'] estate, real and personal" to a Trust, of which he and Mrs. Rhodes were Trustees, "for the uses and purposes and subject to the terms and provisions thereof . . . ."  *Id.* at 4.

The Trust is also dated July 29, 1999, and provides that any property added to it "by bequest" or other method "shall be covered by the provisions of this Trust, the same as if originally included hereunder."  Dkt. No. 125-2, ¶ 2.  Among the powers granted to the Trustees of the Trust are powers "to sell, transfer, exchange, or lease any real or personal property of the trust estate . . .; . . . to execute and deliver any deeds, leases, assignments or other instruments as may be necessary to carry out the provisions of [the] Trust; . . ." and "to do all such acts, take all such proceedings and to exercise all rights and privileges . . . with relation to any such property, as if the absolute owners thereof and in connection therewith to make, execute and deliver any instruments and to enter into any covenants or agreements binding any trust created hereunder."  *Id.* ¶ 13.  The Trust provides that upon Dr. Rhodes' death, his daughters, Josette J. Carroll ("Josette") and Amanda J. Rhodes-Finley ("Amanda"), would become Co-Trustees with Mrs. Rhodes.  *Id.* ¶ 16(A).

Dr. Rhodes died in 2000.  Dkt. No. 1, Compl. ¶ 10.

On March 10, 2001, in her capacity as Personal Representative, Mrs. Rhodes signed an Inventory, under the penalties of perjury, of "all the property of the estate."

---

[1] In *La Belle Iron Works v. United States*, 256 U.S. 377, 389 (1921), the Supreme Court described patents as "intangible property."

2

Dkt. No. 132-6.  There is no mention of the Rhodes patents and it lists "Miscellaneous tangible personal property" in the amount of $1,000.00.  *Id.* at 4.

On November 20, 2009, Mrs. Rhodes executed a document entitled "Exclusive License Agreement," as "patent owner."  Dkt. No. 125-3, at 12.  The agreement purports to transfer an exclusive license to the '417 patent to Acacia Patent Acquisition LLC, now known as Acacia Research Group LLC ("Acacia").   *Id.* at 2.  On November 7, 2011, Acacia executed a document entitled "Assignment and Assumption Agreement," which purports to assign its rights under the Exclusive License Agreement to Endotach.  Dkt. No. 125-4.

On June 18, 2012, Mrs. Rhodes executed a document entitled "Amendment," as "Patent Owner," which purports to amend the Exclusive License Agreement to add the '154 patent as a licensed patent.  Dkt. No. 125-5, at 2.

As previously mentioned, on June 21, 2012, Endotach filed the instant suit alleging that Cook infringes the Rhodes patents.  Dkt. No. 1.

On July 12, 2013, an "Amendment 3" to the Exclusive License Agreement was entered into and made effective to transfer an exclusive license of the Rhodes patents to Endotach from the Trust and is signed by all three Trustees.  Dkt. No. 141-7.  *See also* Dkt. No. 142-5 (Patent Assignment between parts of the Trust).

## II.  RULE 12(b)(1) STANDARD

Cook has moved to dismiss Endotach's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") because, under the facts illuminated in discovery, Endotach lacks standing and, therefore, the Court lacks subject matter jurisdiction.  "As a jurisdictional requirement, [Endotach] bears the burden of

establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)).  In the face of a factual challenge to standing, "'"[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."'"  *Id.* at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007))).  The principle of standing that is important in this case is whether or not Endotach had any legal rights and interests to the Rhodes patents at the time it filed suit because it "cannot rest [its] claims to relief on the legal rights and interests of third parties."  *G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540-41 (7th Cir. 2012) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010); *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988)).

### III. **DISCUSSION**

Endotach concedes that as a matter of Florida law, the Rhodes patents passed to the Trustees of the Trust by operation of law effective as of the date of Dr. Rhodes' death.  Dkt. No. 141, at 4, 6-7.  However, Endotach argues that Mrs. Rhodes did not execute the Exclusive License Agreement in her individual capacity; rather she intended to convey all the rights she might have had in the Rhodes patents, which included her right to license them as a Trustee.  *Id.* at 7-11.  In support of this position, Endotach points to the language of the Exclusive Licensing Agreement, the Trust and affidavits from each of the Trustees regarding their habits with respect to transferring trust property.  *Id.*  Endotach further argues that, if the Court concludes that it lacks standing,

either it should not dismiss this case or it should dismiss the case without prejudice. *Id.* at 11-14.

Cook asserts that Endotach's admissions resolve the standing issue and the Court should dismiss the case with prejudice in light of Endotach's wrongful assertions regarding its right to bring suit and Endotach's resistance to Cook's attempts to get documents regarding Endotach's standing to bring suit. Dkt. No. 149-1, at 8-11. Cook also argues that Endotach is owned by "a sophisticated patent assertion entity whose primary business is to acquire and assert patents" and should not "be heard to complain of the consequences of failed to play by the rules." *Id.* at 10.

The Court concludes that Endotach lacked standing to bring suit because Mrs. Rhodes did not have any individual property interest in the Rhodes patents at the time she purported to convey an exclusive license to Acacia. It is axiomatic that "only the patentee to whom the patent was issued . . . [and] successors in title to the patentee" may sue for infringement of a patent. 35 U.S.C. § 100(d). Endotach admitted that under the terms of the Will and Trust, the Rhodes patents became property of the Trust. Moreover, upon Dr. Rhodes' death, Mrs. Rhodes, Josette and Amanda became Co-Trustees. Therefore, in order to convey an interest in the Rhodes patents under the terms of the Trust, a majority of the Co-Trustees needed to consent to do so. Dkt. No. 125-2, ¶ 16(E). There is no evidence that, at the time she executed the relevant license documents, Mrs. Rhodes had the consent of at least one of her Co-Trustees to make the contracts or that by some other instrument she was the sole owner of the Rhodes patents. Indeed, Mrs. Rhodes admits that at the time she executed the agreements, she believed she was the sole owner of the patents in fee simple, as did Josette and

Amanda.  Dkt. Nos. 141-8, ¶ 8; 141-9, ¶ 7; 141-10, ¶ 7.  Further, this mistaken belief cannot be corrected by an attorney's argument that Mrs. Rhodes was really acting on behalf of the Trust and with the consent of one or more of her Co-Trustees.  Both things cannot be true: she cannot both believe she owned the patents in fee simple and have signed the relevant agreements in her representative capacity as a Trustee.  As such, Mrs. Rhodes did not have a property interest in the Rhodes patents at the time she signed the relevant agreements and nothing was transferred thereby.  Therefore, Endotach lacked standing to bring this infringement suit.

The question is whether or not a dismissal of this suit should be with or without prejudice, which is within the discretion of the Court.  *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (Fed. Cir. 2002).  Generally, the answer turns on whether or not the defect is curable, *see Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 269 F.3d 1328, 1332-33 (Fed. Cir. 2009) (collecting cases); or if "it appears beyond doubt that there is no way [Endotach's] grievance could ever mature into justiciable claims." *Harris v. Quinn*, 656 F.3d 692, 701 (7th Cir. 2011).  Here, the defects in the relevant documents are curable as evidenced by execution of Amendment 3.  Moreover, the grievances Cook raises with respect to Endotach's litigation tactics do not amount to the kind of prejudice for which this Court would grant the ultimate sanction of dismissal even if Cook had raised them in the context of a properly-filed and supported motion.  Therefore, the Court will dismiss this cause without prejudice.

## III.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant Cook Medical Incorporated's Motion to Dismiss, Dkt. No. 124, **WITHOUT** prejudice.  The Motions to Seal, Docket Nos. 143 and 150, are **GRANTED**.  All remaining pending motions are hereby **MOOT**.  Judgment shall enter accordingly.

IT IS SO ORDERED this 6th day of August, 2013.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Steven G. Cracraft
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
scracraft@brannonrobinson.com

Angela K. Hsieh
BRINKS HOFER GILSON & LIONE
ahsieh@brinkshofer.com

Carolyn M. Brougham
BRINKS HOFER GILSON & LIONE
cbrougham@brinkshofer.com

Dominic P. Zanfardino
BRINKS HOFER GILSON & LIONE
dzanfardino@brinkshofer.com

Jason W. Schigelone
BRINKS HOFER GILSON & LIONE
jschigelone@brinkshofer.com

Stephen C. Smith
BRINKS HOFER GILSON & LIONE
sxsmith@brinkshofer.com

Jeffry Michael Nichols
BRINKS HOFER GILSON & LIONE - CHICAGO IL
jnichols@brinkshofer.com

Jeremy Chase Branning
CLARK PARTINGTON HART ETC  - PENSACOLA FL
125 W ROMANA ST
STE 800
PENSACOLA, FL 32502

Michael T. Cooke
FRIEDMAN SUDER & COOKE
mtc@fsclaw.com

Brett Michael Pinkus
FRIEDMAN SUDER & COOKE - FORT WORTH TX
pinkus@fsclaw.com

Jonathan T Suder
FRIEDMAN SUDER & COOKE - FORT WORTH TX
jts@fsclaw.com

Glenn S. Orman
FRIEDMAN, SUDER & COOKE
orman@fsclaw.com